IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| CAROLINA CASUALTY INSURANCE COMPANY,<br><br>      Plaintiff,<br><br><br>      v.<br><br><br>TYMER YEATES, an individual, SHARI YEATES, an individual,<br><br>      Defendants. | ORDER DISMISSING DUTY TO DEFEND CLAIMS, AND ON THE REMAINING CLAIMS OF LIABILITY, DENYING PLAINTIFF'S MOTION AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br><br>Case No. 1:05-cv-00124 |

This case requires the court to determine whether an insurance carrier may be liable under an insurance policy where the policy excludes the vehicle involved in the accident but contains an MCS-90 Endorsement, and where another insurance provider has already paid out an amount that represents the statutory minimum level of financial responsibility required of the transportation company. The current dispute arises out of an automobile collision between a Bingham Livestock Transportation, Inc. tractor-trailer and an automobile driven by Shari Yeates in which Tymer Yeates was a passenger, causing injuries. State Farm Insurance Company has already paid the Yeates' $750,000 – the policy limit and the statutory minimum required of Bingham. Plaintiff Carolina Casualty Insurance Company argues that it has no liability because the tractor-trailer is not listed in its policy with Bingham and the MCS-90 Endorsement attached to the Carolina Policy is not "triggered" due to the $750,000 payment by State Farm. The

Yeates' assert that policy factors of the MCS-90 Endorsement support coverage in this case, and the fact that State Farm has paid out the "statutory minimum" does not alleviate Carolina Casualty of its obligation. The court finds that Tenth Circuit law dictates that a court first look at an insurance policy with the attached endorsement independent of other applicable insurance policies. In this case, the plain language of the MCS-90 Endorsement obligates Carolina Casualty to pay for any judgment recovered against Bingham "regardless of whether or not each motor vehicle is specifically described in the policy." The court finds that the MCS-90 Endorsement operates to remove the language in the Carolina Policy that limits liability to only listed vehicles. Consequently, Carolina Casualty may be liable for a judgment recovered against Bingham as a result of this accident.

The court notes that it appears to be contrary to public policy and the intent of Congress to relieve an insurance carrier of liability simply because another insurance carrier has paid an amount that equals the statutory minimum level of financial responsibility required of the insured. However, whether and how fault might be allocated between Carolina Casualty and State Farm is not an issue currently before the court.

The current parties also dispute whether Carolina Casualty has a duty to defend Bingham and/or its driver in a state action filed by the Yeates. As more fully discussed below, the court finds that this issue is not properly before the court. Accordingly, the court DISMISSES the parties' respective claims on this issue without prejudice.

The court DENIES Carolina Casualty's motion for summary judgment on its remaining claim of liability (#31). As discussed herein, the court GRANTS Yeates' motion for summary

judgment on its liability claim in so much as the court finds that Carolina Casualty may be liable under the policy for a judgment obtained by Yeates against Bingham (#27).  The court's dismissal of the duty to defend claim, and granting of Yeates' motion for summary judgment effectively closes this case.  All claims having been resolved, the court directs the Clerk's Office to close this case.

## FACTS

The underlying facts are not in dispute.  Bingham Livestock Transportation, Inc. employs Jason D. Jackman.  On May 4, 2003, in Box Elder County, Utah, a tractor-trailer driven by Jackman collided with a vehicle driven by Shari Yeates in which Tymer Yeates was a passenger, causing injuries.  The tractor-trailer was owned by Bingham.  The Yeates filed a lawsuit in the First Judicial District Court of Utah against Jackman and Bingham.

Bingham is insured by two different companies, State Farm Insurance Company, and Carolina Casualty Insurance Company.  The State Farm policy is for primary coverage and specifically lists as a covered vehicle the tractor-trailer involved in the accident.  State Farm has already paid the Yeates $750,000 – the policy limit and the statutory minimum level of financial responsibility required of Bingham.  The Carolina Policy is also for primary coverage, but does not specifically list the tractor-trailer as one of the vehicles covered by the Carolina Policy. However, the Carolina Policy has an MCS-90 Endorsement, which Bingham is required to carry under federal law.  An MCS-90 Endorsement provides a safeguard to the public by requiring the insurance company to pay any judgment against the insured arising out of an accident involving vehicles operating under applicable Interstate Commerce Commission regulations.

The questions raised in this action for declaratory relief are: 1) whether Carolina Casualty has a duty to defend Bingham Livestock and/or Jackman in the state action filed by the Yeates; and, 2) whether Carolina Casualty would be liable under the Carolina Policy with the attached MCS-90 Endorsement for a judgment against Bingham for damages incurred in the accident. Both sides have moved for summary judgment on both issues.

## STANDARD OF REVIEW

Summary judgment is appropriate only where there are no disputed material issues of fact, and where one party is entitled to judgment as a matter of law.[1]  To apply this standard, the court must view the evidence in the light most favorable to the nonmoving party.[2]  However, the court finds that there are no factual disputes, and that the remaining issues are questions of law.

## DISCUSSION

### A. Duty to Defend

When Carolina Casualty originally brought this action for declaratory relief, Bingham and Jackman were parties to this action.  However, Bingham and Jackman have since been dismissed.[3]  Due to this dismissal, the court finds that the issue of whether Carolina Casualty has a duty to defend Bingham and/or Jackman in the state court action is not properly before the court.  Consequently, the court dismisses these claims without prejudice.

---

[1]Fed. R. Civ. Pro. 56(c).

[2]*Green v. New Mexico*, 420 F.3d 1189, 1192 (10th Cir. 2005).

[3]Order, May 19, 2006 (Docket No. 24).

Although the court declines to address the merits of these claims, the court notes the Ninth Circuit (among others) has directly addressed this question. In *Harco National Insurance Co. v. Bobac Trucking Inc.*, the court held that an MCS-90 Endorsement did not "create[] a duty to defend the insured in an underlying tort action involving a vehicle not covered under the main policy."[4] The court found that "the reimbursement provision of the MCS-90 is inconsistent with implying a duty to defend."[5] While the court finds this analysis persuasive, the court does not decide whether to apply the Ninth Circuit's reasoning because it does not have the proper parties before it to address this issue.

### B. Liability Under the Carolina Policy and Attached MCS-90 Endorsement

The court does find that the issue of liability under the MCS-90 Endorsement is properly before the court. The Yeates are currently suing Bingham in state court – an action that will directly effect Carolina Casualty. The possibility of liability for damages under the Endorsement will likely influence Carolina Casualty's involvement in the state court action and possible settlement negotiations.

Before analyzing the issue of liability under the Carolina Policy, the court finds it useful to briefly discuss the Interstate Commerce Commission and the history behind the MCS-90 Endorsement.

### 1. The Interstate Commerce Commission

---

[4]107 F.3d 733, 734 (9th Cir. 1997).

[5]*Id.* at 736.

The Interstate Commerce Commission regulates interstate motor carriers. Historically, regulations were avoided by carriers who leased rather than owned vehicles.[6] This led to problems when such vehicles were in accidents because members of the public were confused as to who was financially responsible for damages caused in the accident.[7] To address this situation, "Congress amended the Interstate Commerce Act to allow the ICC to prescribe regulations to insure that motor carriers would be fully responsible for the operation of vehicles certified to them."[8] The ICC did so by creating regulations to "assure that motor carriers maintain an appropriate level of financial responsibility for motor vehicles operated on public highways."[9] The ICC then set minimum levels of financial responsibility, which can be proven by motor carriers with "[p]olicies of insurance, surety bonds, and endorsements."[10] The ICC has adopted a "form endorsement to be included in insurance policies of carriers who use leased vehicles to transport property under ICC certificate."[11] In the instant case, the minimum level of financial responsibility required of Bingham is $750,000, and the proof required of Bingham that

---

[6]*Empire Fire & Marine Ins. Co. v. Guar. Nat'l Ins. Co.*, 868 F.2d 357, 362 (10th Cir. 1989).

[7]*Id.*

[8]*Id.*

[9]49 C.F.R. § 387.1 (2006).

[10]*Id.* § 387.7.

[11]*Empire Fire*, 868 F.2d at 362.

it has met this level includes the MCS-90 Endorsement.[12]  There appears to be a split of legal

authority as to how to interpret and apply these endorsements.

**2. The MCS-90 Endorsement**

The Tenth Circuit's leading case on the interpretation of the MCS-90 Endorsement —

which uses the form language from the ICC — is *Empire Fire & Marine Insurance Co. v.*

*Guaranty National Insurance Co.*  The court specifically addressed the issue of the "effect of an

ICC endorsement on the allocation of risk among multiple insurers."[13]  To begin, the court

established that "the endorsement only negates limiting provisions in the policy to which it is

attached . . . but does not establish primary liability over other policies that are also primary by

their own terms."[14]  In applying this to the case before it, the court found that the endorsement

negated limiting language in the underlying policy, making the policy primary in nature.  The

court stated that the modified policy "must then be compared with the relevant provisions in [the

other applicable] policy to determine the ultimate allocation of liability."[15]  Thus the court

appears to look first only to the policy at issue, determine the effect of an endorsement on that

policy, and only after the underlying policy is accordingly modified, compare it with other

applicable policies.  Perhaps most important to the current case before this court, the *Empire Fire*

court noted that "federal law, as interpreted by the Tenth Circuit, imposes liability on all insurers

---

[12]49 C.F.R. § 387.9.

[13]*Empire Fire*, 868 F.2d at 364.

[14]*Id.* at 361.

[15]*Id.* at 364.

who are obligated to provide some type of coverage for damage pursuant to the terms of their policies and any endorsements thereto."[16]

Other courts have interpreted endorsements in a way that conflicts with the Tenth Circuit's approach.  In *Canal Insurance Co. v. Distribution Services, Inc.*, the Fourth Circuit framed the issue as "whether the MCS-90 endorsement controls the allocation of loss among insurers as opposed to operating only when necessary to protect injured members of the public."[17] In that case, there was an accident between a tractor-trailer and another vehicle.[18]  The tractor-trailer was operated by an employee of a company providing shipping and trucking services, but the vehicle was owned by a leasing company.[19]  The trucking company had insurance which provided $1 million in liability insurance and contained an MCS-90 Endorsement.[20]  The leasing company also had liability insurance for $1 million with an MCS-90 Endorsement.[21]  However, the leasing company's policy was conditioned on the trucking company providing a certificate of insurance, which the trucking company did not provide.[22]  In the dispute between the insurance companies of the leasing company and trucking company, the Fourth Circuit found that the

---

[16]*Id.* at 368.

[17]320 F.3d 488, 492 (4th Cir. 2003).

[18]*Id.* at 490.

[19]*Id.*

[20]*Id.*

[21]*Id.*

[22]*Id.* at 491.

"MCS-90 endorsement operates to protect the public but does not alter the relationship between the insured and the insurer as otherwise provided in the policy" and does not "alter the terms of the policy for the benefit of other insurers."[23]  Because the trucking company's policy covered the incident, and met the statutory minimum requirement, the court held "the public protection purpose of the MCS-90 endorsement has been served.  Therefore, the MCS-90 endorsement in the [leasing company's insurance policy] does not come into play."[24]

In *Minter v. Great American Insurance Co.*, a case heavily relied on by Carolina Casualty, the Fifth Circuit also appears to take a different approach than the Tenth Circuit.  The *Minter* court described the MCS-90 endorsement as a "suretyship by the insurance carrier to protect the public – a safety net."[25]  Carolina Casualty stresses that the *Minter* court refused to find an insurance company liable under an MCS-90 endorsement because a primary policy "not only provided coverage but provided the maximum amount under the policy."[26]  What Carolina Casualty failed to note was that the primary policy that paid out the maximum amount was the same policy to which the MCS-90 Endorsement was attached.   In other words, the *Minter* court refused to find another insurance carrier liable under the MCS-90 Endorsement because the "coverage limit under the St. Paul primary insurance, to which the endorsement was attached,

---

[23]*Id.* at 493.

[24]*Id.*

[25]423 F.3d 460, 470 (5th Cir. 2005).

[26]*Id.*

ha[d] been exhausted . . . ."[27]  Carolina Casualty's reliance on *Kline v. Gulf Insurance Co.* is misplaced for the same reason – the policy to which the endorsement was attached had already paid out in accordance with its own terms.[28]  This common fact clearly distinguishes these two cases from the current case before the court.

The court is persuaded by the Tenth Circuit's approach to MCS-90 Endorsements, and not just because *Empire Fire* is arguably controlling on the court.  The Tenth Circuit's approach is more sound than the Fourth Circuit's approach for at least two reasons.  First, it is a fundamental tenet of contract law that a "contract will be so interpreted as to give effect to its general purpose as revealed within its four corners or in its entirety."[29]  In *Empire Fire* the court looked first only to the policy at issue and the attached endorsement, with any comparison between policies or allocation of fault to take place after limiting language is read out of the underlying policy.[30]  Second, *Empire Fire,* by avoiding the strange result of relieving an insurance carrier of liability simply because another insurance carrier had paid an amount that equals the statutory minimum level of financial responsibility required of the insured, appears to be more in line with Congressional intent and sound public policy.  Although the current case before the court contains facts that arguably create a matter of first impression for the Tenth Circuit, the court finds that *Empire Fire*, if not controlling on this case, provides more than sufficient

------

[27]*Id.* (emphasis added).

[28]2005 WL 2206458, at *1-5 (W.D. Mich. 2005).

[29]11 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 32:5 (4th ed. 1993).

[30]868 F.2d at 362, 367-68.

guidance.  Consequently, the court will look at Carolina Casualty's insurance policy with the attached endorsement independent of other applicable insurance policies.

**3. The Carolina Policy and attached MCS-90 Endorsement**

As discussed above, Bingham has an insurance policy with Carolina Casualty that specifically lists thirteen tractors and twenty-one trailers.  Neither the tractor nor the trailer involved in the accident are listed in the policy and the terms of the policy state that only listed vehicles are covered.  However, attached to the policy is an MCS-90 Endorsement.  The Endorsement indicates that the policy to which it is attached is primary insurance with a liability limit of $1,000,000.  The Endorsement obligates Carolina Casualty to

> pay, within the limits of liability described herein, any final judgment recovered against [Bingham] for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 *regardless of whether or not each motor vehicle is specifically described in the policy*. . . . It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve [Carolina Casualty] from liability or from the payment of any final judgement.[31]

The plain language of the Endorsement obligates Carolina Casualty to pay a final judgment against Bingham "regardless of whether or not each motor vehicle is specifically described in the policy . . . ."[32]

---

[31]MCS-90 Endorsement (emphasis added), Def.'s Mot. Summ. J., Ex. 1 (Docket No. 27).

[32]*Id.*

Carolina Casualty argues that the Endorsement is not "triggered" because other insurance exists and fulfills the statutory minimum of $750,000.[33]  It further argues that the Endorsement is merely a surety and does not create a separate or umbrella insurance policy, and only applies when other insurance is not available.  Carolina Casualty quotes from the First Circuit case *Canal Insurance Co. v. Carolina Casualty Insurance Co.*, which states that an endorsement "simply covers the public when other coverage is lacking."[34]  The interpretation that Carolina Casualty would have this court adopt is that coverage is "lacking" only where the statutory minimum ($750,000 in this case) has not been met.  The court rejects Carolina Casualty's interpretation of the case law.

The Tenth Circuit has already established that the endorsement and attached policy must, like other contracts, be interpreted consistent with the plain meaning of its terms.  The effect of the endorsement is to remove limiting language contained in the underlying policy.  In *Empire Fire*, the Tenth Circuit found that the endorsement removed the language in the underlying policy limiting coverage to "excess."[35]  The court held that "[a]n excess coverage clause is a condition or limitation that would relieve the company of liability.  Thus an excess coverage clause is the kind of limitation that the ICC endorsement is designed to render ineffective."[36]  Following this guidance, the court finds that the provision in Carolina Casualty's underlying policy limiting

---

[33]Pl.'s Mem. Supp. Summ. J. (Docket No. 32).

[34]59 F.3d 281, 283 (1st Cir. 1995).

[35]868 F.2d at 363.

[36]*Id.* (internal quotation marks omitted).

coverage to listed vehicles is removed by the Endorsement.  Therefore, the underlying policy will apply to the vehicles involved in the accident with the Yeates whenever the Endorsement is applicable (i.e. there is a judgment against Bingham, the insured).

Because the underlying policy is primary insurance, the coverage under the Endorsement will also be primary.  As stated in *Empire Fire*, this does not mean that the endorsement makes the attached policy primary over other primary insurance policies.[37]  Nevertheless, the court agrees with the Yeates' position that it would not only be inconsistent with the terms of the policy, but be contrary to public policy to hold that liability is relieved when another insurance company has paid the statutory minimum amount of $750,000.  The purpose of the regulations is to protect the public.  The regulations set "minimum levels of financial responsibility";[38] they do not relieve an insurance carrier of liability once that minimum level is met.  The court finds it counter-intuitive that Congress would have intended that the minimum level of financial responsibility would preclude a member of the public from collecting more than that amount.

Carolina Casualty tries to avoid liability by arguing that coverage is not "lacking" because the statutory minimum level has already been paid to Bingham by State Farm.  The court disagrees on two levels.  First, there is nothing in the Endorsement itself (not to mention the regulations or Tenth Circuit case law) which indicates the Endorsement only applies when other coverage is "lacking."  And second, the court finds that coverage may indeed be "lacking" if the Yeates' damages are greater than the $750,000 already paid by State Farm.  The plain language

---

[37]*Id.*

[38]49 C.F.R. § 387.1.

of the MCS-90 Endorsement, and the policy considerations behind such endorsements, support the court's holding that Carolina Casualty may be liable for any judgment against Bingham as a result of this accident.

By holding that the MCS-90 Endorsement applies in this case, the court has essentially resolved the issue of liability.  Counsel for Carolina Casualty conceded at the summary judgment hearing that if the MCS-90 Endorsement applies, the "defenses that Carolina Casualty has that it doesn't cover these trucks and so forth, go by the wayside and that is an issue between Carolina and Bingham Livestock at some point in the future – they may have to get reimbursement."[39] The court finds that the Endorsement modifies the underlying policy, making it applicable to the vehicles involved in the accident with the Yeates.  Carolina Casualty is not somehow relieved of liability under the policy because Bingham had another primary insurance policy that specifically covered the vehicles and paid $750,000, which is the statutory minimum level.

## CONCLUSION

The court dismisses without prejudice the parties' claims regarding Carolina Casualty's duty to defend.  As outlined above, the court GRANTS Yeates' motion for summary judgment on its remaining claim (#27), holding that Carolina Casualty may indeed be liable for Yeates' damages under the Carolina Policy and attached MCS-90 Endorsement.  Accordingly, the court DENIES Carolina Casualty's motion for summary judgment on its liability claim (#31).  All claims having been resolved, the Clerk's Office is directed to close this case.

SO ORDERED.

---

[39]Summ. J. Hr'g Tr. 10:18-21, Dec. 6, 2006.

DATED this 21st day of December, 2006.

BY THE COURT:

_____
Paul G. Cassell
United States District Judge